I'm Howard Miller, representing the plaintiffs and appellants in the case with me. The counsel table is my partner, Graham Lipsmith. May it please the court, I'd very much like to reserve ten minutes for rebuttal. On the issue of preemption, which I think is a major issue we're here to discuss, I think there is a central legal concept out of California that really determines that issue. Could you please speak up a little? I think there is a central legal concept in California that determines that issue, which is that an express contract for the transfer or sharing of ideas and concepts for compensation, an express concept for doing that, is not preempted. And no one has ever claimed it is. In fact, in the briefs, when we raise that point, that the express contract on the ideas and concepts is not preempted, it is not disputed. That's DESNY. DESNY gets us to the implied and fact contract. I see. The law is clear, the express is not. As a matter of fact, the industry could hardly function if express contracts for sharing ideas and concepts were preempted, because it's part of almost every agreement that's entered into for the production of a property. Mr. Miller, one thing that I didn't quite follow in this case, in the analysis, was that everyone seemed to argue it under the second prong of preemption as to whether or not the rights asserted under state law are equivalent to exclusive copyright rights. And to me, it seems that whether or not the subject matter of the state law claims is probably equally determinative in this case, because we all know that the subject matter of copyright, for something to fall within the subject matter of copyright, it has to be reduced to a tangible level of expression. We're talking about ideas. Although there is some confusion in the district court's decision about whether they're talking about a work or ideas. Can you explain that for me? Yes. Thank you, Judge Wardlaw. In fact, in our brief that we filed in the unbanked court in response to the defendant's supplemental brief, we raised that express issue and cited the Dunlop case from the 11th Circuit, because the Dunlop case has squarely held that the ideas and concepts are not within the subject matter of copyright. But counsel, didn't you concede before the three-judge panel that you were not arguing under that first prong? The reason we raised that. And you raised concession to the district court. The reason we raised that, Judge Tallman, is because of the issue of Grosso being put at issue in this unbanked panel. I think procedurally this is something the court can decide in deciding the scope of Grosso and what the rule is. If the court were to take the position that because we didn't raise it in the three-judge panel, it were not ground for reversal, that would be a procedural option to the court. But given the fact that preemption in Grosso was so prominently raised for the unbanked court, we thought it was important for the court to know about Dunlop and to consider the subject matter issue for its full ruling on preemption. Before we get to Grosso, is there any doubt here that we're really talking about scripts and other tangible materials, not just concepts and ideas? The thrust is concepts and ideas because of the treatment that was filed, which basically are concepts and ideas. And the complaint alleges concepts and ideas. There was a DVD prepared, which was a complete presentation. And I think it is a fair conclusion that because of that DVD, there are works. There are works. Yes, absolutely. Now, on Grosso, as you can recall, we distinguished Grosso. But the opposing counsel thinks we ought to overrule it, and quite a few of the amicus briefs suggest that Grosso be overruled. Help us sort all of that out. Let me talk first to the distinction of Grosso. And I'd like to talk about the opinion in the panel, Judge O'Scanlan, because the panel's opinion distinguished Grosso on the ground that this complaint called for a promise to not exploit the works, the ideas and concepts. And because the complaint, according to the panel opinion, called simply for exploitation of the ideas in a critical allegation and without any reference to payment for it, that, therefore, this made it different than Grosso. In fact, in the panel's opinion, the panel said that the defendants rejected the offer and made an implied promise. And here's the critical quote on which the panel opinion changed that turn. Made an implied promise not to disclose, divulge, or exploit the plaintiff's ideas and concept without the express consent of plaintiffs, period. And it's that citation that was made to the complaint that is the fulcrum on which the panel opinion distinguished Grosso. Unfortunately- Well, didn't we also distinguish Grosso in that it was a sale of total interest? It wasn't a retention of rights. I want to- Grosso more explicitly was simply a sale. There was one allegation in here that called for the possible forming of a joint venture in addition to all the other allegations that talked about a sale. But I think if you read the panel's opinion, the quote that I just read was the fulcrum of the panel's opinion saying this is different than Grosso. But you don't think it makes any difference whether it's a sale or something less, right? No, I don't think that makes a difference. I think as long as there's compensation, that is the extra element that makes it not equivalent to the copyright. Mr. Miller, wasn't your- wasn't the plaintiff's allegation that the expressive purpose of the offer of the material was to enter- was to partner with the defendants, right? That was one of the allegations- That was an allegation in paragraph 47. Now, a partnership is not necessarily compensation. It can be a gain or it can be a loss. No, but that's why- So it's inconsistent with the industry practice, which you also alleged in paragraph 46, as to there being compensation. How do we deal with that inconsistency? If all that paragraph 47 called for were a partnership, then the point would be precise. But paragraph 47, and as I'm going to quote from paragraph 48, also adds that plaintiffs expected to receive a share of any profits and credits that might be derived from the exploitation of the ideas. And also any losses. The allegation is expected to receive the profits. But that's inconsistent with your allegation of partnership. Not necessarily, because the terms of- Oh, it's only a one-side partnership, like private gain and public loss? I think the centerpiece of this particular paragraph focuses on obtaining the profits. And I think what's critical is that this is one allegation among six or seven others that clearly talk about a sale. And I especially want to get back to paragraph 48 and the distinction that was drawn because of the panel concluding that this was only a promise to not exploit with the period. In paragraph 48, there is not a period. It essentially is an inadvertent mistake in the quote that is critical to the whole opinion. And, Judge O'Scanlan, I say this in the spirit of the old phrase, even Homer nodded. I mean, see that character die and come back and everything. The full quotation that is critical to the opinion is what the panel started out as quoting as the full term of its opinion, which is they agreed, the plaintiffs alleged, the defendants agreed, not to disclose, divulge, or exploit the plaintiff's ideas and concepts without the express consent of plaintiffs. But there is no period. That is not the end of the sentence. There is a comma in the allegation. So it is not to exploit without the express consent of the plaintiff, comma, and to share with the plaintiffs the profits and credit for their idea and concepts by producing and broadcasting the product. Now, in every paragraph in which this is alleged, there is no single paragraph in which the allegation, whether in establishing the facts or in establishing the terms of the contract, there is no single paragraph in which compensation is not part of what is alleged as part of this implied in fact contract. Can I just get back to this concept versus work issue? I want to be clear. When your clients first met with the defendants, were they selling a concept for a TV series or were they selling a script for a TV show? What exactly were they trying to sell? They were selling the idea and concept for a TV show, and it's alleged in the complaint as to what those concepts are. As a matter of fact, the copyright claim was voluntarily withdrawn without prejudice, all that's left in the case of the implied in fact contract. But as the complaint alleges, the meetings and the communications were for ideas and concepts for the television show. If you were seeking a contract for ideas or a concept, that would mean necessarily, assuming it was successful, that you would be, they would be creating or you would be partnering to create any number of works which would each independently have its own copyright. That is correct. If you had sold them a work or if you were trying to sell them a work, such as a screenplay for an individual show, you would not be necessarily selling them the right to make derivative works such that they would be able to create a whole TV series based on that. It depends. If it were selling a script, then the script presumably would be able to be copyrighted, and then it would be a question of what the license is for the copyright. It would be whether or not you had also given them the rights to derivative works that would necessarily have to be subject to the contract. Yes, that is correct. Mr. Miller, the merits panel spoke of derivative rights flowing from Section 301, whereas the statute itself refers to equivalent rights. Would you comment on why you think the merits panel was wrong, if you do believe it was wrong, in using the concept of derivative rights? I think the concept is that the word in the statute in Section 301 is equivalent rights. That was what the Congress passed in the Copyright Act of 1976. It took effect January 1, 1978. That is the central second prong are the rights equivalent. And there is a difference, is there not, between equivalency and something that is derivative, is there not? Absolutely. As a matter of fact, if you use the term derivative, how do you cabin the concept at all? I do not think you do, and I think derivative is not the appropriate word here, because derivative really comes out of the copyright rights. It is one of the five rights in the statute. Well, isn't it separately defined? Aren't derivative works separately defined within the Copyright Act? Yes. Right. It's not really one of the rights that is within copyright that are enumerated in Section 106. It's not in 106, but it's defined as one of the rights that flows. It's definitely along with collective works, different types of works. I think, if I can, my central argument here is that this is a case about pleading, not about preemption, that if an implied and fact contract under California law, substantively, is properly pleaded, then that implied and fact contract is outside the preemption. What is an implied and fact contract, and how is it different from an oral contract? The implied and fact contract… This sort of gets us back to Desney. I thought Desney was an oral contract. No. Desney was an implied and fact contract. They had a conversation with the secretary. The secretary said, write it up, and the guy writes it up and reads it to her over the phone. In Desney, the facts included the conversation, but the holding and the concept about implied and fact did not rest on that. Because there was nothing said expressly about compensation. There was nothing said expressly because, no, because the compensation was inferred from the conduct. The difference between the express and the implied and fact is clearly set out in the Civil Code, California Civil Code, which substantively briefly defines the two. Section 1619 says a contract is either express or implied. 1620 says an express contract is one the terms of which are stated in words. And 1621 of the Civil Code says an applied contract is one the existence of terms of which are manifested by consent. Under California law, express and implied are just two different ways of having a contract. Just like written and oral are two different ways of having a contract. And that's why the fact that it's not disputed that the express contract for the sharing and development of ideas and concepts for compensation, not disputed that the express contract is not preempted, means that the implied and fact contract properly pleaded and properly proved fits within exactly the same category. There is no distinction for this purpose in California law between the express contract and the implied and fact contract. And that's the barrier that those who claim preemption have got to get over. They're not willing to say the express contract is preempted. They can't. It's so fundamental a part of the industry. And that means the issue is a pleading issue. Do you properly plead under California law an implied and fact contract? And if you do, then you are squarely outside preemption because the express contract. What were the facts pleaded which show consent under 1621? 1621's consent is shown by conduct. No, no, no. Pardon me. The question was what facts do you plead and where that show consent to pay compensation? The consent is inferred from the conduct which consists of meetings over a seven-year period with about a dozen people that are named in the complaint. And it alleges that that conduct is conduct from which you can infer consent. Now, I do want to say one other thing about the pleading here. This case was filed when what we all loved as Conley v. Gibson was good law. Since this pleading was filed, Twomley and Iqbal have been decided. We believe this complaint, because of what I set out, the seven years of meetings, the number of people that are met, the explicit description of the ideas and concepts meets the Iqbal standard. But if the court is going to apply the Iqbal standard, then because this complaint was filed before Iqbal, I think in all fairness we should be given the right to amend to comply with what the new pleading procedure is. And what do you think? Even though you had five and a half months to do so when the district court dismissed the case the first time and you did nothing. There was a motion to amend which the court denied. Would you clarify for Mr. Miller, was the plaintiff unrepresented at the time the district court's order was in or counsel stepped in? I believe the order you're referring to was unrepresented and we stepped in later. At what point did she get counsel? Pardon me? At what point did you counsel step in? I stepped in. Maybe you can help. I believe it was roughly six months or so after that particular decision. Did the district court conduct a hearing or just rule on the papers? Rule on the papers. Can I ask you a question about DESNY? Yes. Do you understand DESNY to require in order to succeed on such a claim that the notion of compensation needs to be discussed prior to disclosure? No. The cases are pretty clear on that. It's does conduct. From conduct do you infer an obligation to compensate? It all rests on conduct. I think that's one of the. . . And have there been any cases since DESNY that have sort of explored that point? Yes, there have been. In California? In California. It's pretty clear. DESNY is just one example of an implied and fact contract. What you look to is the conduct, and you ask from the conduct can you infer that the submission was made, and from the conduct can you infer that there was an agreement to compensate? My question is what would you add to this complaint to meet what you suppose are the additional requirements of ICBAL? I would make the number of meetings, who was present at the meetings, more explicit. I would add a specific allegation that there is a standard protocol in the industry for dealing with idea submissions. Am I confusing this case with another complaint or another case that said that the meetings were in accordance with business and customs in the entertainment industry? Was that in your complaint? It is, and we fleshed that out, is exactly what those customs are. An especially important point in looking at a multi-factor analysis of whether the complaint is sufficient is, you know, the industry has had 50 years. DESNY was 1956. The industry has had 54 years and 42 years since the Copyright Act of 1976 went into effect. There are standard protocols when submissions are made, and when the person, the company, the major company to whom it's submitted, does not exercise any of those standard protocols to control risk, but instead goes ahead with the numerous meetings and flesh out in accordance with what we further allege is the custom of the industry, that is one of the courses of conduct from which you can infer an agreement to pay because there are standard protocols to avoid that risk. And so we flesh out the complaint in terms of practices in the industry and in terms of factually what happened in this case. You know, when I talk about the pleading case, I'll just say one other thing. The Motion Picture Association of America filed a very important amicus brief in this case. The MPA is important here because the MPA under its old name, the Association of Motion Picture Producers, actually filed an amicus brief in DESNY by the same distinguished firm that filed an amicus brief here, Mitchell, Silverberg, and Knapp. Justice Schauer in DESNY extensively discusses that brief and why the implied effect contract is valid. In this brief, 54 years later, same firm, same client, and the critical thing that's said in the brief in terms of what this case is about is in footnote 3 of the MPA amicus brief, on page 5 of that brief, where the MPAA says, quote, We do not suggest here that properly alleged claims under DESNY v. Wilder are preemptive. Rather, they simply argue that the pleading is not proper under ROSA. So even the MPAA, with all this experience, 50-plus years of experience, made clear that in their view, as long as the DESNY claim, which is the implied effect contract, is properly pleaded, that is not preemptive. If I may, I'll reserve the remainder of my time for rebuttal. Thank you. May it please the Court, the judgment of the district court should be affirmed here as Mons' claims cannot survive preemption. Although we've had this discussion that Mons labeled his claim a breach of implied contract, in fact, the claims assert his right to control the reproduction and distribution of his work and to prevent other people from doing so. That is the central core of this complaint. And that's why the panel correctly said that this falls squarely within the scope of 106 and is therefore preempted by Section 301. How is this different from DESNY? Because in DESNY, and Your Honor asked whether or not Price was discussed in DESNY, the DESNY court made very clear that the facts they were dealing with were that Victor DESNY contacted Billy Wilder's secretary. He had extensive discussions with her. She offered to submit a treatment. He said, I will write the synopsis. He testified that prior to providing the information in the synopsis, he expressly said, but if you use my story, you will pay me reasonable value. And she said, yes, if Mr. Wilder uses your story, we will pay you. That is light years away from what we have here where we have a plaintiff who is alleging that he met with somebody at some time. He says he presented. We don't know what that means, some materials that contain certain ideas and that somehow from that we are supposed to infirm the kind of specificity that was set forth in DESNY, the court in DESNY. There is a distinction between this case and DESNY, but I was really asking a question pertaining to the point you were making, and that is that you said in this case, it was an attempt to control, get copyright-like rights. How is that different from DESNY in that regard? DESNY in that regard found that it was an offer for sale. It was an unconditional release of any interest that Mr. DESNY had in this material. It was a sale for which the other side had obligated itself to pay. In this situation, as Judge O'Scanlon wrote, it is clear from the pleadings that exactly the opposite is true. If you look at the allegations on the breach of implied contract, it says the agreement was, quote, not to exploit plaintiff's ideas and concepts without the expressed consent of the plaintiffs. Put another way, the allegation, the implied promise, which is one of the elements that DESNY spoke about, the implied promise alleged here was in paragraph 46B that defendants would not exploit plaintiff's ideas and concepts without their consent. And this Court … But the sentence goes on, Ms. Todd, that the plaintiffs receive appropriate compensation and credit. Yes, and I wanted to address that, Judge Wardlaw. But nowhere in this complaint is it alleged that this property was being given or any of these ideas were being unconditionally given to the defendant. So the only source for compensation was what would happen if there was an exploitation pursuant to the person's consent. What he's saying is, of course, if later you come back to me and we reach an agreement whereby I authorize you to exploit this, I expect to be paid for it. Well, so what I'm not clear about, and I'll ask you the same as I asked Mr. Miller, from my reading of this, if he is to review the claim, this was the first in this negotiation went over a period of years and it was with a large number of people. They identified a number of people. There's allegations. You have to accept them as true. I don't think the allegations are that specific. Thank you for arguing. All right. So at first it was an idea, and then so they were negotiating about an idea. And this is a case, unlike Desney, where the idea was rejected, but negotiations continued. I mean, Desney accepted the idea. What happened was Mr. Wilder made the show. He wanted the story. So then somehow creeps into here, and I'm not sure whether it creeps in in the complaint or from other things, that there was a work involved. Now, assuming there was a work involved, I could see how you could say, okay, there was a work that was within the subject matter of the Copyright Act, plus there was a concept that was broader than that that was not within the subject matter of the Copyright Act, and both were being discussed. I think that since the concept is part and parcel of the work, it falls within the subject matter of Copyright Act. That's only if you say that the work was what they were starting out with their negotiations with and not the concept. And isn't that something that should be tried? Isn't what was really being discussed something that should be tried and not dismissed at the pleading stage? Or maybe summary judgment. I mean, it just strikes me that this is not an appropriate case to be decided at the pleading stage. I think that in virtually all of the cases where people have been discussing whether or not the ideas are part of the subject matter, whether it's the Fourth Circuit and Rancher or others, it always starts with an idea, but there is a work of authorship involved. So what? Let's say I have a script and it has a great idea, and I go to somebody and say, you know, it's a lousy script. It's really not very good. No one would ever produce it, but at the heart of it, it's a great idea. So what I'd like to sell to you is the right to have somebody else write the script that's better than my script involving this idea. And I want us to have a partnership or I want to sell it to you for cash or whatever. And let's say we have an express contract. You say, that's fine. You know, sign the dotted line. That's not preempted, is it? No. How is your case different from this one, my hypothetical? Because the Copyright Act covers works of authorship and all the elements within those works. Okay, so I have a script that's not a good script, but you don't have to be good to be copyrightable, right? You know that. That's true. So let's say I even, I don't know, what do you do these days to get a copyright? Nothing, right? Nothing, nothing. I still remember the days when you had to send it in and get a registration. But let's say I type on it, copyright Kaczynski, whatever year it is today, 2010, right? But I say, you know, it's really not very good and I don't expect anybody, I think you'd be foolish to try to use my dialogue, it's terrible, you know. But there's a great idea there. So if we can have an express contract and that's not printed or a copyright act, why is, how is an implied contract any different? It depends, because you're dealing with the world of ideas. I'm not saying that an implied contract is different except to the extent that when you have an implied contract and you have an implication from somebody coming in and bringing paints into your house and then they're going to paint, then maybe you have an implied contract where it's pretty clear what the terms are. When you try to say that you are implying a contract from someone coming in and submitting to you a script, and then what ideas are we impliedly agreeing to? If every time that somebody submitted a script, you could say, well, even if they didn't use any kind of protected expression, they used an idea. Are we talking about a character? Are we talking about a format? I understand it's harder, and that's something you can take up with the California Supreme Court as to when you have to have enough of an implied contract. But how does it affect preemption analysis? Because it doesn't, regardless of what the California Supreme Court holds as an implied contract and sufficient under its laws, this court is responsible for making sure that those laws don't interfere and encroach upon the rights that are provided under the Copyright Act. But again, that sounds like, if you're getting back to what Mr. Miller raised here, that this is really a pleading problem about this case and its facts as opposed to the fact that you can have a contract that is clearly not preempted, like a contract to distribute a movie or something like that. That's not preempted by that. And the law is very clear about that. But it sounds to me like that's really the issue here. I mean, you're saying that because this is so nebulous, and I don't disagree with you, but so nebulous, you really under California law don't have a contract. That's a different issue than saying that it's preempted, is it not? I think there's two elements. One is that it's so nebulous that it doesn't establish a contract. Secondly, and more importantly I would submit for this Court, is do you, by permitting such a nebulous contract, regardless of what California does, allow creators of works or people to circumvent completely the Copyright Act? So are you really asking us to hold that DESNY-type claims are preempted? No. So what's the difference? Because in DESNY there was a specific communication... But basically, if I understand your real argument, is that we ought to preempt this whole field. I don't think we're there, and I don't think we need to be there. But that's where some of the amici seem to be. You know, I'm going to date myself. I actually sat in class with Mel Nimmer when he discussed DESNY at length and taught us the new Copyright Act. And I still think to this day he discussed DESNY at length because he was quoted so much in it, even though the Supreme Court didn't necessarily agree with everything. But the Copyright Act, it seems to me, only protects the expression of the idea. It does not protect the idea. And if what the complaint alleges is that they were trying to sell their idea and defendants did not want to buy their idea, but they went ahead and used it anyway, that seems to me to be an appropriate DESNY claim. I guess I'm trying to focus a little bit on this issue. I think you're kind of addressing whether or not ideas fall within the subject matter of copyright. And I don't think they do, and that's why I'm wondering about this whole preemption argument and how everybody landed on talking about probably excellent luring on behalf of the defendants is why everybody ended up talking about equivalency. Well, I think that every court that has considered this issue, except for Dunlap, which did not deal with a creative work, has found, certainly every circuit court, has found that ideas that are expressed within a written work, even though they're not expression, still fall within the subject matter of copyright and are to be tested under the equivalency. If I could quote from Wrench, Your Honor, plaintiff's unprotectable ideas for a psycho chihuahua character, in that case, if you may remember it, it was, you know, Taco Bell. Okay. Wrench held that those ideas were within the subject matter of copyright and said, the Second, Fourth, and Seventh Circuits have held that the scope of the Copyright Act subject matter extends beyond the tangible expressions that can be protected under the Act. We join our sister courts in holding that the scope of the copyright subject matter is broader than the scope of the Act's protections. And, you know, the Second Circuit, the Fourth Circuit in Burge, the Seventh Circuit in Proceedee said that uncopyrightable elements that are within the scope of a work of authorship still fall within the subject matter of copyright. And I think that's why the plaintiffs originally conceded that point and didn't dispute it, and that's why I think it's really not in dispute here. But also put this in the context of Grosso, if you wouldn't mind. Sure. It's kind of the next link. Right, right. And I wanted to address that, and I will tie it into what Mr. Miller said about pleading cases, because Grosso was a pleading case, and in Grosso the court did say, and particularly in the amended opinion Judge Schroeder emphasized, that this was simply a pleading case and that the court was not taking a position on the merits of the claim. As it turned out, the merits were not there, and, you know, years later the case was dismissed. However, the problem is, and maybe part of the problem has been obviated now with Iqbal and Twombly, so that we don't have to deal with pleadings that are quite so loose. But the problem with Grosso is that, as interpreted, the broad language really has had a substantive impact. And I think to understand that, you have to look at Grosso's factual allegations. He alleged he sent his script to a former Miramax executive at another company who happened to be in the same building as Miramax, that there were similarities between the script and Miramax's motion picture, and therefore Miramax used and he was entitled to money. Those are exactly the core claims in a copyright action. This is not a DESNY claim. There is no communication like DESNY of the conditions on which anything was being offered. There is no term discussed. And so what has happened because of that case is that by holding that these allegations are sufficient to state an implied contract with nothing more, it has had a serious impact, because what it does is it now really alters the balance between the protection of original works and the freedom of ideas that is prescribed by the Copyright Act. Well, it seems to me that you're just answering Judge Thomas's question by saying this isn't protected at all. There's no implied contract because they didn't have specific terms for the implied contract. It's really a question of whether they pleaded an implied contract, not whether there's – not whether anything's preempted or not. Well, I don't think they pleaded an implied contract because in Grosso I don't think you can imply a contract from the fact that somebody put something in the mail. I just don't think that's correct. And I don't think under today's pleading statute Grosso was – Well, this isn't just putting it in the mail. I mean, you have all these meetings and – Oh, I'm sorry. I thought you were talking about Grosso. You're talking about – No, no. I'm talking about what your answer leads to in this case – Sorry. Sorry. – is that there's simply no implied contract because they didn't ask for money, they thought they were going to use it for nothing,   if they didn't plead an implied contract,  then there wouldn't be an implied contract, or whatever – whatever reasons, they didn't sufficiently plead an implied contract. Had they pleaded more specifics, then we'd have an implied contract. And then – Well – I don't know where we'd be, but – I think if they pleaded specifics that were consistent with their existing pleadings, there's no way to form an implied contract, because the existing pleadings specifically say that they are not authorizing anybody to do anything. They're coming in and offering to partner in the production and distribution and broadcast of a work. That's the allegation. What if it weren't a work? What if it were just an idea? What if they said, look, I've got a great idea about a small western town with a stern sheriff and a deputy with a bum leg, and I want to come talk to you about it, and I think it would make a great TV show. I think – But there's nothing that you could possibly put a copyright to. He hasn't even – Right. Does that change the analysis? I think that under those circumstances, this Court doesn't fall within the subject matter of copyright, because it's not in a tangible work, and this Court then would not be charged with making sure that the free exchange of ideas was preserved. Then it would be a matter of the state court deciding whether or not the state court, under those circumstances, wanted to create standards for the protection of ideas. It's really highly counterintuitive, because at that point you're saying copyrights subtract rights rather than add rights. No. You say, look, I've got this copyright. I don't want to claim anything of this copyright. I know that federal law gives me a copyright in this work, but I could claim it. I mean, I want to put it in the public domain. I don't want any copyrights here. All I'm selling is the idea at the heart of it. I don't think – Because it's so lousy. It's so bad. It's totally – but it's a great idea. So why should the guy who has a copyright have fewer rights than the guy who doesn't have a copyright? Well, several reasons. One is he doesn't have – Give me a good one. One is he doesn't have fewer rights, because whereas under state law, presumably under contract damages, it would be the value of that idea, which would be pretty minimal, under the copyright – It's really a great idea, like a sheriff. Well, you know – Better than the bum leg. You know, that raises an interesting question, because in reality, although we hear a lot of this language about the industry is based on, you know, submission of ideas and the value of the ideas, in fact, when people come in to pitch, they rarely are coming in to sell an idea. But what about television series? They are coming in. They don't come in with a whole series of shows. They come in and say, look, I've got a great idea for a series. Right. And they pitch the series, and they sell it, and it's not a small amount of money they get. But they're not coming in to pitch an idea and go away, particularly in a television series. Well, that's what you guys say, you know. Did you ever see The Player, you know, that opening shot? Yeah. You know, but – No. I mean, in reality, when someone comes in to pitch a television series, they're hoping this series is going to go on for years. They're hoping somebody is going to produce it. They're going to be involved. They're going to be on set. They're going to be consultants. They're going to be showrunners. Maybe even partners. And partners. And then they would have an agreement that clearly falls outside the scope of what is covered by, you know – Not if you just steal the idea they wouldn't have an agreement. You tell them, go away, that's a terrible idea. And then three years later, they see it on television. You know, I appreciate the skepticism, Your Honor. I don't think that that is, in fact, a contract. And I don't think – Well, the skepticism is probably due to the fact that you don't meet for seven years with people if you don't have an intent to do something. And that may fall through. Or it may fall through and then you may use it. But – I don't think – This is not somebody just mailing something in. If somebody mails something in, you have protections against that there. And there's industry practices that protect against that. But when you meet with someone for seven years – I mean, I find it a little odd to say, well, they didn't say what the compensation would be. Nobody would ever think that you're meeting them with seven years and intend to use it without paying for it. Yeah. I think that it is really not a fair reading of the complaint to say they were meeting for seven years. What they say is – Even if it were two years. All they say is that from 1996 to 2003, we presented our materials to various and sundry people. There's no indication that they had meetings with all these people. There's no indication that there was ever any discussion or other communication. Well, if that's the case, then maybe their request is right. Maybe he should have been given an opportunity to amend, particularly since there are more specific requirements now than there were when they started. Again, I don't think they can amend consistent with their allegations. But I would like to address this notion about selling ideas and finding some protection here for the person who comes in to make sure that his ideas aren't stolen. Because the consequence of grasso, as we indicate and as the amici indicate, is not that someone who comes in with an idea now has some better comfort that he's going to be protected. It's quite the opposite. Because the term idea can be so broad, and of course there are a multitude of ideas in any work, what has happened is that there has been a restriction on people having access to the entertainment industry. There are now strict submission policies. Many fewer people than in the past are being heard. When people come in and they want to submit something, they're being subjected to very strict waivers of rights that can be quite onerous at times. Because that is the only way that the studios, given the breadth of grasso, have found a way to protect themselves. Well, really, what's wrong with that at some level? I mean, it sets forth the rights of the party. If I'm reading, maybe I don't understand the scope of your preemption argument, but it seems to me that you really are arguing that DESNY itself doesn't claim this preemption. You say not, but maybe so. What about an express, let's say that there's an express contract that I'm going to transmit an idea, and I've got some DVD with the idea. An express contract is not that you'll compensate for me, but that we're going to have a meeting and you have to agree you're not going to use the idea or anything that flows from that. And that's the only consideration. Do you think that express contract of that sort is preempted? If all I'm agreeing to is that I won't violate the Copyright Act, then it would be preempted. If I'm agreeing that I won't use any idea, I would think that unless someone told me had something more definite than that, that I probably wouldn't enter into it. But if I had expressly agreed to that, I suppose I would. But that is very different from saying that somehow by some amorphous custom, somehow people are now bound. And anyway. No, but you're arguing more pleading than preemption, I guess. And I understand that argument. I'm just trying to figure out the scope of your preemption argument. I think the scope of the preemption argument is that, and this gets to what's wrong with the narrowed submission policies that have evolved. What's wrong with it is that it undercuts the goals of the Copyright Act. It undercuts the goals of the First Amendment. We now have the little guy having a much harder time getting hurt and the public is hurt because what we have done is we have restricted the development of new and fresh expression based on ideas. Isn't your beef, though, with the California legislature? Shouldn't you go and get the designee reworked as opposed to trying to expand the scope of the Copyright Act and preempt things which have historically never been preempted in Hollywood? Well, I'm not sure that they've never been preempted. Well, can you give me an example of one that has been preempted in the way you're talking about? Sure. In the central district court here, there were numerous. I'm talking about an appellate case. Oh, an appellate case in California. Let me take a look. Maybe I can think of it. Okay. I'm not aware of one that fits that description. But, again, it seems to me your argument is a policy argument. I understand it from a business perspective, but I don't understand why expanding the scope of preemption beyond anything it's ever had with respect to private contracts. Again, pleading aside, I don't see how that changes the issue that you're talking about. You can go to the California legislature, and if you've got the horses there, you can get the legislature and the governor to change it and do away with these kinds of issues if you really want to. And what if we got the California legislature to say that you can convey intellectual property rights orally and convey exclusive rights? That would fly in the face of the Copyright Act. But then you're going exactly to the language of the Copyright Act, which this does not. Well, that is a central question, and I think it does. I think you have to look at the Copyright Act and say the goal of the Copyright Act was to preempt and to create a national uniform system just so that people would know what their rights and what their limitations were. But how do you address the argument that Mr. Meller made that the DMV has been around for over 50 years, the Copyright Act has been around for over 40 years, and we've not had this kind of an issue before in terms of preemption? I think that this issue has been around for at least 10 years, Your Honor. Okay. And where are all of the thousands of cases and the problems that you bring up? We haven't seen this before here, have we? Well, we have seen lots of cases. And prior to Grasso, a great number of these cases were dismissed at the district court level. I think Grasso caught people by surprise. When I asked to Grasso, should we overrule that in part? What's your position on that? Our position is, first and foremost, you should affirm months. Okay. Secondly, we think that it would be helpful, at least in the first instance, if you were going to clarify that Grasso was a pleading case that would no longer be guiding given Iqbal and Twombly. And the third issue is that if the court were so inclined, yes, we would like the court to address the Grasso issue substantively and say that on those facts where all you have is somebody mails or sends in a script and then turns around and sues for breach of an implied contract, that that so flies in the face of the principles of the Copyright Act where ideas are supposed to be free as the air, that if you allow that circumstance to not avoid preemption, then basically you have completely undermined the protection for ideas that set forth in the Copyright Act. That would be our position. And so I think that's my conclusion, exactly like that. Thank you very much for giving me that prompt. May I ask you just one question? Yes, sure. With respect to some of the district court cases that were decided before our decision in Grasso, at least, isn't it true that you were talking about whether the real problem here is with Desney? Isn't it true that at least one of those cases suggested that Desney was wrongly decided? Can you tell me which case you're referring to? I was thinking of Metrano. That may be. I don't remember Judge Snyder's writing there exactly. Yeah. But it does suggest that. But I think this Court doesn't need to reach that point today. I think the important point is to make sure that cases that have the facts of the sort alleged here are found to be preempted, and secondarily that the facts of the sort alleged in Grasso are held to be preempted. Ms. Talzis, I'm sorry, one last question. Sure. I don't understand your complaint with Grasso's plea requirements because it requires the allegation that the idea was submitted by plaintiff to defendants with the understanding and expectation fully and clearly understood by defendants that plaintiffs would be reasonably compensated for its use by defendants. And that's exactly Desney. I don't understand how, on the one hand, you can say we're not quarreling with Desney, but, two, we should change or overrule or modify Grasso when it states exactly what Desney says. But it only states it in a totally conclusory, abstract way. And when you look at that statement in light of the facts, which is simply a mailing. Yeah, but Grasso is saying, the court panel is saying, this is what you have to plead. Now, whether or not you can prove it, that's a different thing. I understand that's where Judge Schroeder was coming from. Unfortunately, it can be read far more broadly than that, and it has been read far more broadly than that. And there have been numerous writers in the area of copyright who have specifically stated that this is unfortunately to be read that broadly. And Professor Goldstein has even commented that this type of loose pleading, permitted to survive, really is what has caused the producers to restrict people's access to them and, therefore, to diminish the opportunities for people with good ideas to be heard, and that it is so fraught with litigation. And I, frankly, I have had three litigations where three different people said they came up with the idea for the big loser weight loss competition show. I have had four litigations where different people said they came up with the idea for Shakespeare in Love. I have two litigations where people said they came up with the series Las Vegas. Business is good, eh? Yeah, business is good. I think that's absolutely what they, in fact, I think my clients think my business is too good. So, no, but that is the problem. And you won them all, presumably. Pardon? You won them all, presumably, right? Well, no comment. But it is really a very serious problem when you talk about an idea and not being able to make a claim that somehow somebody used your idea as these cases demonstrate because ideas are so vague that to try to enforce a contract like that, never mind that the state court, that may be their responsibility. But if they're so vague, you win your case, right? So that's... Pardon? It all comes out right in the end. There's no great problem because they hire you and they win. Well, I keep my fingers crossed that that happens, but I would prefer in defense of my clients that they don't have to hire me. Thank you. Thank you. Thank you. I'd just like to comment on what's been said about the effect in the industry on these rules. First of all, of course, there's absolutely nothing in the record about how this is functioning in the industry. Nothing at all. And I read in the narratives in the brief as well as here about the poor, beleaguered, victimized studios who are constantly being bombarded by ideas that put them at risk. In fact, when Ms. Teitel talked about the protocols that had been developed since Grosso to deal with the risk here, they weren't developed just since Grosso. It is DESNE that the industry adapted to. And every device for protection that Ms. Teitel talked about that the studios used when idea submissions come in today have been regularly used since the 60s, 70s, and 80s when the studios figured out how to deal with the implications of DESNE. That's why when you ask how the complaint would be amended, one of the critical ways to amend the complaint is that there are established protocols for contractual protection. When idea submissions are made, that was not done in this case. Instead, we had the allegation during meetings over a period of seven years. The parties continued to meet. In terms of Grosso, this is not an in-bank panel to review the facts of Grosso. It's to deal with the holding of Grosso about preemption. I will say that in the panel opinion, in Judge Scanlon's panel opinion, with Judge Coleman and Judge Lefkoe sitting by designation, there is a paragraph that expressly says that the allegations in Grosso are within DESNE. Expressly in terms of describing what happened in that case. So what finally do we have as a position here? I think it's very important, that's why we said in the brief, it's really an opportunity for this circuit to clarify these rules. This is not a preemption issue. This is a pleading issue. It's the way it's being argued as a pleading issue. And under California law, if an implied in fact contract is properly pleaded, today under ICPL, and I think this title is correct by the way, I think the requirements of Twombly and ICPL do deal with a great many of the concerns that defendants and studios have had over this. Your suggestion is perhaps we should have supplemental briefing on how that changes things? On how ICPL changes things? No, my suggestion really is we think that on the briefing, the complaint is sufficient under ICPL. If the court believes, however, I think the court should hold no preemption that it's a pleading issue. If the court should find this complaint insufficient under ICPL, then we would simply ask for the right to amend because ICPL came after the filing of the complaint. In terms of preemption. Can I ask a question about, okay, so there's two sort of procedural issues. One, the motion to dismiss was not opposed. How do we deal with that? And two, the denial of the request to amend the complaint. I think we cited, and I don't have the case on the tip of my tongue, I apologize, but we did cite when this issue came up that this court does have discretionary power, even given that record. There was a motion to amend that was denied, but even given that record, this court has discretionary power. If it finds the complaint does not meet ICPL to reverse and remand with an order to amend, I think the case is there that the court has the discretionary power. But in terms of the overall issue here, I think that we have a situation where the industry knows how to deal with this and, frankly, is seeking advantage here. Well, there may be a difference. Let me ask you this question. In terms of preemption analysis, is there a difference in the remedy sought? And by that I mean in a typical DESNY type of claim, there is at least the notion that you're paying for an idea. Here it's withholding or a restriction on the use of the idea. And to me, it seems to me that is arguably the damages that flow from that type of claim are more like copyright infringement damages as opposed to compensation. Does the remedy make a difference? Judge Thomas, I think that's a misreading of the complaint, though that's constantly been stated in the argument, and that's why I pointed out. Well, let's just ask theoretically then. Do you think that a go ahead. No, a pure allegation that you promise to not exploit, and that's it? That fairly, whether expressed or implied, could be said to involve copyright remedies. But every single allegation in here which talks about consent talks about compensation. The allegation is you can't use it without compensation and our consent. There is no allegation in here that is a naked allegation that you simply can't exploit it. That's why I pointed out the comma in the critical sentence, not a period, and so I didn't worry the profits. So I urge the court to read this complaint every, and I'm sure you have, I apologize, but every single allegation involving this contract adds and share in the profits and be compensated, there is no naked allegation here that just says you can't use the idea. And that's why this complaint falls within the Desney-Grosseau line of cases, and that is why we think that this should be reversed and sent back, and if the court feels it should be amended, amended. But I think for the structure of this, in addition to the interest of my client, I think a clear analysis that this is not a preemption issue but is a pleading issue will clarify this law for everyone. And I think especially it will clarify this law in the context of what the pleading requirements now are with Iqbal and Twombly, because to the extent there have been historic complaints about sloppy pleadings, and it's no secret that there are lawyers who do sloppy pleadings, to the extent there have been those historic complaints, Iqbal and Twombly deal with that issue. So I think. Thank you. Thank you very much. The case is arguably canceled and we are adjourned.
judges: En Banc Before: Kozinski, Schroeder, Reinhardt, O'scannlain, Thomas, Wardlaw, Gould, Paez, Tallman, Bea, M Smith, Cjj